BL

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ronald J. Harris, | ) No. CV 06-0755-PHX-DGC (ECV) |
| Plaintiff, | ) **ORDER** |
| vs. | ) |
| Dora Schriro, et al., | ) |
| Defendant. | ) |

Plaintiff Ronald J. Harris filed a 42 U.S.C. § 1983 action against the Director of the Arizona Department of Corrections (ADC) Dora B. Schriro, Warden Ivan Bartos, Assistant Warden Terry Johnson, Dietician Marvel L. Morrison, Director of Pastoral Services Mike Linderman, and Valerie Suwinski (Dkt. #1). Plaintiff alleged that his constitutional rights were violated by the denial of his right to exercise his religion because he was not provided proper kosher meals (Count I) and he was not allowed to attend regular religious services (Count II) (Id.). The Court ordered Defendants to answer Plaintiff's first claim that he was not provided a proper kosher meal, and dismissed without prejudice his second claim related to religious services (Dkt. #16).

Plaintiff now seeks injunctive relief (Dkt. ##11, 32, 49, 57) and a hearing on his motion (Dkt. #15). Defendants have moved to dismiss for lack of exhaustion (Dkt. #27) and seek to stay a ruling (Dkt. #64). The Court will deny all the motions.

**I. Motion for Preliminary Injunction and Temporary Restraining Order**

**A. Extraneous Requests**

Plaintiff's request for a hearing on his motion for injunctive relief will be denied (Dkt. #15). The Court will rule on Plaintiff's request based on filings from both parties.

Plaintiff requested that the Court summarily issue injunctive relief based on the length of time it has taken Defendants to answer his original Motion for Injunctive Relief (Dkt. #32). Defendants argue, and the record demonstrates, that Defendants failed to respond to Plaintiff's motion earlier because Plaintiff refused to provide Defendants with a notarized signed medical release (Dkt. #34). Accordingly, Plaintiff's request will be denied.

Plaintiff also requested that a third party Rabbi inspect the ADC kitchen, food, and food handling and cleaning procedures (Dkt. #57). Plaintiff's request, however, appears to be a request for expedited review as Passover is approaching. As discussed below, the record before the Court at this early stage demonstrates that the ADC's kitchen, food, and food handling and cleaning procedures are kosher. Thus, to the extent Plaintiff requests a third party to inspect the kitchen, his request will be denied without prejudice. To the extent that Plaintiff requests expedited consideration, his request is mooted by the Court's order. And because the Court is denying Plaintiff's request for a third party Rabbi, the Court will deny Defendants' Motion to Stay as moot (Dkt. #64).

**B. Motions for Injunctive Relief**

Plaintiff moved for injunctive relief seeking a kosher diet for religious and health reasons (Dkt. ##11, 32). Plaintiff maintained that he was originally on a kosher diet, but has been taken off at various times in retaliation (Dkt. #11). Defendants responded that Plaintiff's request is moot because he is currently receiving a properly prepared kosher diet (Dkt. #63). In addition, Plaintiff has not demonstrated a risk of irreparable injury or a likelihood of success on the merits (Id.).

Plaintiff also seeks to be provided a Passover kosher diet or, in the alternative, to be allowed to purchase food from a vendor obtained through the Aleph organization between April 3-10, 2007 (Dkt. #49). Plaintiff maintained that ADC does not have a kosher diet for Passover because ADC does not properly cleanse its kitchen (Id.).

Defendants responded that Plaintiff will receive a kosher diet that meets Passover guidelines (Dkt. #59). Defendants also argued that allowing Plaintiff to purchase food from an outside vendor is a security risk (Id.). Defendants submitted declarations from

1 Administrator of Pastoral Activities Linderman, Dr. James Baird, Chaplains Stephen C.
2 Kingsland, Kenneth W. Herman, and James A. Miser, Contract Management Specialists
3 Suwinski and Jennifer Bantlin, and Major Edwin Loa and an affidavit from District Manager
4 of the Canteen Mark Horneffer (Dkt. ## 59, 60, 62, 63).

**1. Factual History**

Plaintiff suffers from Crohn's disease and was placed on a low fat diet (Dkt. #63, ex. B ¶¶ 5-7). In July 2005, Plaintiff requested to be placed on a kosher diet, and was informed that he would have to surrender his low fat diet card (Id. ¶¶ 9, 13). After Plaintiff was removed from his Medical Diet as requested, he was approved for and placed on a kosher diet (Id. ex. C ¶ 4; ex. D ¶ 4). Plaintiff was informed that if he missed five meals in seven days he would be removed from a kosher diet for six months (Id. ex. C ¶ 4; ex. D ¶ 4).

Inmates receiving a kosher tray must sign for the tray (Dkt. #62 ¶ 6). In March 2006, Plaintiff was removed from the kosher diet because he failed to sign for five or more kosher meals in a seven day period (Dkt. #11, ex. 2; Dkt. 63, ex. D ¶ 6; ex. E ¶ 4). Plaintiff was informed that he could submit a religious privilege request to the unit Chaplain for re-evaluation of his diet (Dkt. #11, ex. 6). Plaintiff submitted the requisite forms and was informed that he could apply for the diet six months from the original date of his non-compliance (Id. ex. 4; Dkt. #63, ex. D ¶ 6; ex. E ¶ 4). Plaintiff submitted a grievance indicating that he did not miss any meals, but was merely unable to sign for his lunch because he was working (Dkt. #11, ex. 6). Plaintiff, however, was not placed back on his kosher diet until six months later, in September 2006 (Dkt. #63, ex. F ¶ 3; ex. G ¶ 3). Linderman attested that Plaintiff will remain on the kosher diet as long as he complies with the policy, *i.e.* not missing more than five meals in a seven day period (Dkt. #60 ¶ 9). During the time Plaintiff was not receiving his kosher diet due to his non-compliance, Plaintiff's medical condition was monitored on a regular basis (Dkt. #63, ex. B ¶¶ 16-22).

Kosher diets exclude pork and pork-related derivatives (Dkt. #62 ¶ 9). The ADC kitchen also ensures that dairy products are not served in the same meal as meat, chicken, and fish (Id.). Due to the character of a prison kitchen, it is impossible to produce totally kosher

- 3 -

1 meals because the ADC cannot provide a two separate kitchens, one for the preparation of
2 kosher meals and one for the preparation of general population meals (Id.).  However, a
3 dietician and Rabbi review the ADC menu and certify it as kosher and nutritious (Id.).

4     Items on a non-Passover kosher diet are certified as kosher by a recognized Orthodox
5 Kosher Standard (OU for the Union of Orthodox Jewish Congregations, K for Kosher, or
6 CRC for the Chicago Rabbinical Council) (Dkt. #62 ¶ 10).  Fresh fruits and vegetables and
7 inherently kosher foods do not contain the certification (Id.).  Additionally, pre-packaged
8 items such as tea, coffee, sugar, sugar substitutes, salt and pepper, and other condiments do
9 not contain the certification (Id.).  But those items are delivered from vendors in bulk
10 packages that do contain the certification (Id.).

11     Kosher entrees are purchased from certified kosher purveyors in cases of 14 frozen,
12 pre-cooked, individually packaged plastic containers with saran wrap like seals (Dkt. #62 ¶
13 11).  The entrees are prepared separately from the general population food by Canteen
14 employees trained in the preparation and handling of kosher foods (Id.).  Once the entree is
15 prepared, the tray is wrapped in saran wrap and stored in a freezer used exclusively for
16 kosher diets (Id.).  The hot portions are placed in a warming cart (Id.).  The utensils and other
17 equipment used to prepare and serve the kosher food are stored, handled, and cleaned
18 separately from those utensils and equipment used to prepare and serve general population
19 food (Id.).

20     Passover begins sundown April 2 and ends April 10, 2007 (Dkt. #60 ¶ 4).  The ADC
21 provides a kosher diet with food that meets kosher Passover requirements (Id. ¶ 5).  The
22 Passover meals are prepared in the same manner as kosher diets by Canteen employees
23 trained in proper methods for preparing and handling kosher foods and utensils, all of which
24 are stored, handled, and cleaned separately (Dkt. #62 ¶ 18).  Linderman declared that the
25 kosher diet meets nutritional and religious requirements (Dkt. #60 ¶ 8).

26     Inmates are not allowed to purchase food from outside sources due to security reasons
27 (Dkt. #60 ¶ 11; Dkt. #61 ¶ 3).  Specifically, food from outside sources may be laced with
28 dangerous contraband impossible to detect but easy to ingest (Dkt. #61 ¶ 5).  Moreover,

1 allowing inmates to purchase food from outside sources opens the door to concealed
2 contraband (Id.).

### 2. Law

A request for injunctive relief requires that Plaintiff make a showing of "real or immediate threat" of injury. Hodgers-Durgin v. De La Vina 199 F.3d 1037, 1042 (9th Cir. 1999) (quoting City of Los Angeles v. Lyon, 461 U.S. 95, 111 (1983)). Plaintiff is entitled to preliminary injunctive relief only if he shows either: "'(1) a likelihood of success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits and the balance of hardships tipping in [the movant's] favor. These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases.'" MAI Sys. Corp. v. Peak Computer, Inc., 991 F.2d 511, 516-517 (9th Cir. 1993). Under either formulation of the test, the movant must demonstrate a significant threat of irreparable injury. AGCC v. Coalition for Economic Equity, 950 F.2d 1401, 1410 (9th Cir. 1991).

### 3. Analysis

The evidence before the Court demonstrates that Plaintiff is receiving a kosher diet on a daily basis and will receive a Passover kosher diet. The evidence also demonstrates that a Rabbi has reviewed the menus and the kitchen and has approved both. Defendants concede that the diets are not "totally" kosher because they cannot be prepared in a separate kitchen, merely prepared with separate equipment and utilities. However, this restriction serves a legitimate penological interest. See Turner v. Safley, 482 U.S. 78 (1987) (providing that a prisoner regulation that impinges on inmates' constitutional rights is valid only if it is "reasonably related to legitimate penological interests"). The costs for providing a separate kitchen for the preparation of kosher meals is prohibitive. Defendants also have a legitimate interest in streamlined food service. See Ward v. Walsh, 1 F.3d 873, 879 (9th Cir. 1992). Defendants use separate equipment and utensils, which are cleaned and stored separately from those used to prepare non-kosher meals. And allowing Plaintiff to purchase food from an outside vendor would be a security risk. Because Plaintiff is receiving a kosher diet and

1  will receive a Passover kosher diet, he has failed to show a significant risk of irreparable
2  injury. Thus, his requests for injunctive relief and a temporary restraining order will be
3  denied.

**II. Motion for Reconsideration**

Plaintiff also requested that the Court reconsider its original screening order dismissing Hernandez and Mitchell based on their repeated attempts to prevent him from exhausted his administrative remedies (Dkt. #32).

Motions for reconsideration should be granted only in rare circumstances. Defenders of Wildlife v. Browner, 909 F. Supp. 1342, 1351 (D.Ariz. 1995). "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." School Dist. No. 1J, Multnomah County v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993). Such motions should not be used for the purpose of asking a court "'to rethink what the court had already thought through — rightly or wrongly.'" Defenders of Wildlife, 909 F. Supp. at 1351 (quoting Above the Belt, Inc. v. Mel Bohannon Roofing, Inc., 99 F.R.D. 99, 101 (E.D.Va. 1983)).

The Court dismissed Hernandez and Mitchell because Plaintiff failed to sufficiently allege that his constitutional rights were violated by the failure to provide him sufficient opportunities to attend religious services. Plaintiff's current allegations – that Hernandez and Mitchell have blocked his attempts to exhaust his administrative remedies – do not constitute newly discovered evidence in support of Plaintiff's claim about religious services. Accordingly, Plaintiff's request for reconsideration will be denied.

**III. Motion to Dismiss**

Defendants moved to dismiss on the grounds that Plaintiff failed to exhaust his administrative remedies as to his claim that he was denied a kosher diet (Dkt. #27). Defendants concede that Plaintiff subsequently exhausted this claim, but not prior to filing the instant action (Id.). Hearing Officers Aurora Aguilar and Marene Coffery declared that Plaintiff did not filed any inmate grievances to the Director's level concerning his kosher

1  diet prior to filing the instant action (Id. exs. A, B). Coffery declared that Plaintiff
2  subsequently filed an appeal to the Director (Id. ex. B).

3  Plaintiff responded that he has in fact appealed six grievances regarding his kosher
4  diet to the Director's level, three prior to bringing suit and three since (Dkt. #31). Plaintiff
5  further contended that he sent letters to Schriro through his attorney because he had doubted
6  that the various correctional officials would submit his appeals (Id.). Plaintiff maintained
7  that Defendants have attempted to prevent him from appealing his grievances to the Director
8  (Id.).

9  Pursuant to 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act, a prisoner may
10 not bring a lawsuit with respect to prison conditions under § 1983 unless all available
11 administrative remedies are exhausted. See Roles v. Maddox, 439 F.3d 1016, 1017 (9th
12 Cir.), cert denied 127 S.Ct. 232 (2006). Exhaustion is mandated "regardless of the relief
13 offered through administrative procedures." Booth v. Churner, 532 U.S. 731, 741 (2001).
14 It is required in all inmate suits regarding prison life. Porter v. Nussle, 534 U.S. 516, 523
15 (2002). The purpose of the exhaustion requirement is to "afford corrections officials time
16 and opportunity to address complaints internally before allowing the initiation of a federal
17 case." Brown v. Valoff, 422 F.3d 926, 936 (9th Cir. 2005) (quoting Porter, 534 U.S. at 525).

18 Defendants bear the burden of raising and proving the absence of exhaustion. Wyatt
19 v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). The Court has broad discretion as to the
20 method to be used in resolving the factual dispute. Ritza v. Int'l Longshoremen's &
21 Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988).

22 Plaintiff attached copies of inmate grievances submitted prior to filing suit, while
23 Defendants merely submitted grievances filed after commencement of this action. Based on
24 the record, Plaintiff submitted grievances regarding his request for a modified kosher diet due
25 to his Crohn's disease before filing the instant action (Dkt. #31). Plaintiff proffered a
26 grievance to the "Director" regarding his request for a medically ordered modified kosher
27 diet (Id.). Plaintiff also submitted grievances to the "Director" about his inability, as an
28 Orthodox Jew, to attend religious services on a regular basis (Id.).

Defendants argue that Plaintiff's grievances regarding the denial of a kosher diet involved medical issues, not religious issues, and that the instant action raises a religious claim (Dkt. #34). Defendants also argue that several of the grievances were not properly submitted as Plaintiff went outside the grievance system or submitted them to the wrong individual (Id.).

The purpose of the grievance system is to "afford corrections officials time and opportunity to address complaints internally." See Brown, 422 F.3d at 936. The inmate need neither name each individual he plans to name as a defendant in his § 1983 action nor list every nuance or theory of recovery he plans to raise in his § 1983 action. See Jones v. Bock, 127 S.Ct. 910, 922 (2007). Defendants concede that Plaintiff challenged the failure to place him on a kosher diet to the highest level of the grievance system. The fact that Plaintiff did not indicate this was a religious issue, not merely a medical issue, does not result in his failure to exhaust his administrative remedies. Further, Plaintiff's submission of grievances outside of the system, when he exhausted inside the grievance system, is immaterial. Accordingly, Defendants' Motion to Dismiss will be denied.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn with respect to the pending motions. All other matters in this action, including any future motion, remain with the Magistrate Judge for disposition as appropriate.

(2) Plaintiff's motions for injunctive relief and temporary restraining orders (Dkt. ##11, 32, 49) are **denied**.

(3) Plaintiff's Request for a Third Party Rabbi to Inspect the ADC Kitchen (Dkt. #57) is **denied without prejudice.**

(4) Plaintiff's Motion for a Hearing (Dkt. #15) is **denied**.

(5) Defendant's Motion to Dismiss (Dkt. #27) is **denied.**

(6) Defendants' Motion for a Stay (Dkt. #64) is **denied as moot**.

1        DATED this 19th day of March, 2007.

————————————————————
David G. Campbell
United States District Judge