SVK

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ronald J. Harris, | No. CV 06-0755-PHX-DGC (ECV) |
| Plaintiff, | **ORDER** |
| vs. | |
| Dora Schriro, et al., | |
| Defendants. | |

Plaintiff Ronald J. Harris, who was formerly confined in the Arizona State Prison system, filed this civil rights action against various officials of the Arizona Department of Corrections (ADC) and Marvel Morrison, an employee of Canteen Correctional Services (Canteen), a private corporation contracted to provide food services to ADC inmates. Defendant Morrison moves for summary judgment, and the matter is now fully briefed.[1] (Doc. ##86, 104, 108.) The Court will grant the motion and dismiss Defendant Morrison from the action.

## I.  Procedural History and Summary of Motion

Plaintiff, who is Jewish, alleges that he was denied regular Kosher meals (Count I) and religious services (Count II) in violation of the First Amendment. The Court directed

---

[1] The Court issued a Notice pursuant to Rand v. Roland, 154 F.3d 952, 962 (9th Cir. 1998) (*en banc*). (Doc. #91.)

Defendants Schriro, Bartos, Johnson, Linderman, Suwinski, and Morrison to answer Count I and dismissed Count II because it did not state a claim.

Defendant Morrison moves for summary judgment on the grounds that (1) the Court rejected Plaintiff's substantive allegations when it denied Plaintiff's motion for a preliminary injunction; (2) Morrison qualifies as a state official and is, therefore, not liable for money damages in her official capacity; (3) the request for injunctive relief against Morrison is moot; (4) Morrison is not liable because she lacked the requisite discretion and authority to control the alleged deprivation; (5) Plaintiff's substantive claims are meritless; (6) punitive damages against Morrison are not warranted; and (7) Morrison is entitled to qualified immunity.

## II.     Motion for Summary Judgment

### A.     Legal Standards

#### 1.     Summary Judgment

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party who must demonstrate the existence of a factual dispute and that the fact in contention is material, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and that the dispute is genuine. Id. at 250; see Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir. 1995). Rule 56(e) compels the non-moving party to "set forth specific facts showing that there is a genuine issue for trial" and not to "rest upon the mere allegations or denials of [the party's] pleading." Fed. R. Civ. P. 56(e); Matsushita Elec. Indus. Co., Ltd.

v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The opposing party need not establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). Rule 56(c) mandates the entry of summary judgment against a party who, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial. Celotex, 477 U.S. at 322-23.

When considering a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255. But, if the evidence of the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted. Id. at 249-50.

### 2. Free Exercise Claim

The First Amendment provides in relevant part that the government shall not prohibit the free exercise of religion. U.S. Const. amend. I. Nevertheless, free exercise rights are "necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." O'Lone v. Shabazz, 482 U.S. 342, 348 (1987). To prevail on a free exercise claim, an inmate must show that a defendant substantially burdened the practice of his religion by preventing him from engaging in conduct mandated by his faith without justification reasonably related to legitimate penological interests. Freeman v. Arpaio, 125 F.3d 732, 736 (9th Cir. 1997); cf. Coronel v. Paul, 316 F. Supp. 2d 868, 878 (D. Ariz. 2004) (it is whether a practice is important to the prisoner and motivated by sincere religious belief rather than whether the practice is "mandated" by his faith that is determinative, citing Thomas v. Review Bd. of the Indiana

Employment Sec. Div., 450 U.S. 707, 714, 716 (1981)).[2] To substantially burden the practice of an individual's religion, the interference must be more than an inconvenience, Freeman, 125 F.3d at 737, or an isolated incident or short-term occurrence, see Canell v. Lightner, 143 F.3d 1214, 1215 (9th Cir. 1998) (interference that is relatively short-term and sporadic was not substantial).

In addition, to prevail on any § 1983 claim, a plaintiff must demonstrate that he suffered a specific injury as a result of specific conduct of a defendant and show an affirmative link between the injury and the conduct of that defendant. Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976). In other words, a particular defendant's liability under § 1983 only exists where a plaintiff makes a showing of personal participation by the defendant in the alleged violation. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

**B.     Parties' Contentions**

In support of her motion, Defendant submits her affidavit (Doc. #88, Morrison Aff.); the affidavit of Mark Horneffer, District Manager for Canteen (Doc. #62, Horneffer Aff. ¶ 1); ADC Department Order (DO) 912, Food Service System (id., Ex. A); the Food Service System Technical Manual (id., Ex. B); the ADC Diet Reference Manual (id., Ex. C); the Orthodox Kosher Meal Plans (id., Ex. E); and other documents. Defendant asserts that she is employed as a Regional Dietician by Compass Group USA, Inc. d/b/a Canteen Correctional Services, which is a private corporation contracted to provide food services to inmates under the direction and control of ADC. (Doc. #38, Morrison Aff. ¶ 2; Doc. #62, Horneffer Aff ¶ 1.) Morrison argues, among other things, that Plaintiff cannot show an affirmative link between the alleged constitutional violation and her personal involvement in conduct within the scope of her discretion and authority.

---

[2] In Thomas, the Supreme Court held that what is a religious belief does not turn upon the judicial perception of the belief or whether the belief is shared by all of the group's members. 450 U.S. at 715-16. But the ability of a prisoner to obtain whatever he decided was necessary to practice his religion without "even a tenuous connection to some principle of the religion . . . would be inimical to preserving institutional order, safety, and security of the inmates and staff." Doty v. Lewis, 995 F. Supp. 1081, 1085 (D. Ariz. 1998).

Horneffer attests that, due to special security issues involved in providing services in a correctional facility, ADC continually monitors the services provided by Canteen and maintains strict control and supervision over operations. (Doc. #62, Horneffer Aff. ¶ 2.) ADC is the final authority over services provided in the prison and "dictates the manner, method, and means by which Canteen fulfills its obligations." (Id.) This means that ADC determines the menu for all meals and the type of food and beverages served, and requires Canteen to modify portions served and to substitute certain menu items for inmates receiving religious or medical diets. (Id. ¶ 3.) Canteen is required to serve inmates receiving religious or medical diets separately from other inmates and to follow a specific process to confirm that meals conform to the dietary restrictions. (Id.)

Horneffer further attests that the Kosher Diet is an item-specific, two-week-cycle menu that excludes pork and pork derivatives from all meals. (Id. ¶ 9.) It is designed to ensure that dairy products are not served in the same meal as meat, chicken, or fish, but it recognizes that it is not possible to prepare totally Kosher meals in a prison because there is no separate Kosher kitchen. (Id.) He further attests that, except for fresh fruits and vegetables, which are considered inherently Kosher, only foods certified by a recognized Orthodox Kosher standard are served and that where there are pre-packaged items, they bear an appropriate Kosher certification symbol. (Id. ¶ 10.) He also asserts that some prepackaged items – such as sugar, salt, pepper, and other condiments – are delivered from vendors in bulk packaging with appropriate Kosher certification, but that individual packets may not bear the symbol. (Id.) Canteen is not permitted to deviate from the Kosher Diet menu except as authorized by ADC to respond to problems of product availability or security issues. (Id. ¶ 9.) Substitutions are made from the same food group and, per instructions from Morrison, Canteen does not make substitutions for Kosher Diet meals with food served to the general inmate population. (Id.)

Morrison attests that she is a dietician – not a rabbi, priest, chaplain or religious coordinator – and has no involvement with prescribing diets or preparing and serving meals or establishing ADC food-service policy. (Doc. #88, Morrison Aff. ¶ 3.) She asserts that she

- 5 -

is responsible for planning menus that provide nutritionally adequate meals pursuant to the specifications and directives of ADC. (Id.) She attests that Canteen prepared and served meals in accordance with ADC DO 912, Food Service System; the Food Service System Technical Manual; the ADC Diet Reference Manual; and the religious diet prescribed for Plaintiff by ADC administration. (Id. ¶ 4; Doc. #62, Horneffer Aff. ¶ 8.)

Morrison further attests that prior to the implementation of the Kosher Diet menu, she certified that all items listed on the menu complied with pertinent nutritional guidelines. (Doc. #88, Morrison Aff. ¶ 6; Doc. #62, Horneffer Aff. ¶ 9.) She also asserts that ADC's contract rabbi reviewed the menu and certified that all items complied with Orthodox Kosher dietary standards. (Doc. #88, Morrison Aff. ¶ 6; Doc. #62, Horneffer Aff. ¶ 9.) She also reviews the Kosher Diet menu annually and adjusts it as necessary to certify compliance with nutritional guidelines, but she does not certify that the menu satisfies Kosher dietary standards. (Doc. #88, Morrison Aff. ¶ 6.)

In his response, Plaintiff asserts that "at issue is the number of calories provided" to him based on the diet, that the diet was "woefully inadequate as to the daily minimum requirements," and that Morrison ignored the facts showing that the diet was indifferent to Plaintiff's nutritional needs. (Doc. # 104 at 2.) He argues that her claim that she is a state official and has immunity contradicts her position that "she is an outsider who merely wrote out the diet." (Id.) He asserts that loss of immunity was determined by the Court on screening of the Complaint. He disputes the argument regarding injunctive relief, apparently arguing that the preliminary injunction was erroneously denied. (Id. at 1-2, 3.) Plaintiff further argues that Morrison's claim that she "could not remedy caloric shortfalls" that were "as much as half of the 2200 calories on many days is offensive to justice and morality." (Id. at 3.) He claims that the diet served is the so-called Ashelman diet,[3] contrary to Morrison's assertions that it is modeled after that diet but not identical to it. (Id. at 4.) Plaintiff appears to assert that at least one food vendor used an improper Kosher certification and that

---

[3] Apparently this is a reference to Ashelman v. Wawrzasek, No. CV 83-1072-PHX-MS. (Doc. #88, Morrison Aff. ¶ 5.)

- 6 -

1  Morrison was told about a "phony state of Arizona" Kosher certification "years before this
2  so called rabbinical alteration." (Id.)  Finally, Plaintiff asserts that Morrison states in her
3  affidavit at paragraph 6 that she personally certified all items as Kosher.  (Id. at 5.)

4  Because a verified complaint may be used as an affidavit opposing summary
5  judgment if it is based on personal knowledge and sets forth specific facts admissible in
6  evidence, the Court will also consider the allegations set forth in Plaintiff's Complaint.
7  Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995).  Plaintiff generally alleged that
8  he was regularly served non-Kosher items, such as packets of salt, pepper, and salad
9  dressing; foods were mishandled; pots, utensils, and other items were not properly cleaned;
10 and general inmate food items were substituted for Kosher items.  (Doc. #1 at 6-7.)  It
11 appears that the only specific allegation against Morrison involved an alleged pattern of
12 deliberate non-compliance and cover-up, which Plaintiff claimed was evidenced by a
13 June 27, 2005 memorandum from Morrison stating that, in reference to a "Stipulated Final
14 Judgment from the 9th District Court, . . . in case of violations it is easier for a lawyer to
15 defend the absence of one food item that may be in question, than to justify food served that
16 was not a proper Kosher food item." (Id. at 11, Ex. A.) (emphasis in original).

### C.    Analysis

18 Defendant proffers evidence demonstrating that she was not personally involved in
19 the alleged violations of Plaintiff's constitutional rights and that, therefore, Plaintiff cannot
20 establish the necessary link between her conduct and any alleged violation.  She attests that
21 (1) she has no involvement with prescribing diets or preparing and serving meals or
22 establishing ADC food-service policy, (2) her role is to certify the nutritional adequacy of
23 the food items, and (3) she does not certify that the meals satisfy Kosher dietary standards.
24 The matters to which she attests are within her personal knowledge.  Therefore, she meets
25 her burden to show a lack of a genuine issue of material fact, and the burden shifts to
26 Plaintiff.

27 Plaintiff does not meet his burden to show a genuine material factual dispute.
28 Plaintiff's claims generally involve service of non-Kosher items and non-Kosher food

preparation. Plaintiff has alleged no facts to dispute Morrison's statements that she is not involved in preparing or serving meals and that she did not make ADC food-service policy. Rule 56(e) requires the non-moving party to set forth specific facts showing a genuine dispute. Fed. R. Civ. P. 56(e). Plaintiff argues that Morrison's claim that she is both a state official entitled to immunity and that she had only a limited role is contradictory, but the Court does not agree. It is entirely plausible that as a Regional Dietician, her role in Canteen's provision of Kosher meals would be limited, and Plaintiff proffers no evidence to demonstrate otherwise. Moreover, contrary to Plaintiff's claim, Morrison does not attest that she certified menu items as Kosher – in fact, she states that she "certified that all items on the Kosher Diet menu complied with the pertinent nutritional guidelines" and that ADC's contract rabbi certified compliance with Kosher dietary standards. (Doc. #88, Morrison Aff. ¶ 6.)

Likewise, Plaintiff's claim that the diet was nutritionally inadequate is neither probative nor material. Plaintiff fails to provide any evidence of a nutritionally or calorically inadequate diet, and more important, this claim is beyond the scope of the Complaint. In addition, Plaintiff's allegation that Morrison knew about improper Kosher certification is neither plainly within Plaintiff's personal knowledge, nor is it material because there is no evidence to dispute Morrison's assertion that she does not certify the meals as Kosher. A dispute regarding a non-material fact is insufficient to defeat summary judgment. See Anderson, 477 U.S. at 248. And whether the Kosher Diet is the same as the Ashelman diet is also not probative of Morrison's involvement in any alleged failure to provide the Kosher Diet.

Plaintiff fares no better with his allegation in the Complaint that Morrison engaged in a pattern of non-compliance regarding the Kosher diet. The memorandum on which he relied indicates the opposite. In the memorandum, Morrison summarized her findings concerning the availability of Kosher items in local grocery stores and specifically recommended that ADC Kosher-menu-food-services managers, to whom the memorandum was addressed, determine the availability of Kosher products in case of emergency. The

memorandum specified particular food items – e.g. crackers, beans, peanut butter; the relevant Kosher-certification symbol; and the stores where the items could be purchased. In the memorandum, Morrison wrote "[o]ne last piece of advice, if you or any of your staff has a doubt as to if an item is OK to be served, leave the item off the tray." (Doc. #1, Ex. A.) (emphasis in original). She further indicated that although ADC must serve a minimum of 2100 calories daily from Kosher-designated food items, the daily calories on the meal plan exceeded the 2100 amount. Considering the undisputed evidence of Morrison's limited participation in providing the Kosher Diet and viewing the memorandum in its entirety, the single reference to defending a lawsuit is not significantly probative of an allegation of deliberate non-compliance with the Kosher Diet. See Anderson, 477 U.S. at 249-50.

The Court will grant summary judgment to Morrison on the ground that Plaintiff fails to demonstrate a material factual dispute regarding Morrison's participation in any alleged constitutional deprivation. The Court need not consider Morrison's other arguments.

**IT IS ORDERED**

(1) Defendant Morrison's Motion for Summary Judgment (Doc. #86) is **granted**, and Defendant Morrison is **dismissed** from this action.

(2) The remaining Defendants are Schriro, Bartos, Johnson, Linderman, and Suwinski.

DATED this 18th day of December, 2007.

_David G. Campbell_
David G. Campbell
United States District Judge